IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ALL HAIR AND BEAUTY PRODUCTS,
INC., and JAMES FUGAH, and
other similarly situated individuals.

      Plaintiffs,

                                  Civil Action No.:
                                  JURY TRIAL DEMANDED

ISSAM J. MATAR, AMY MATAR,
CYNTHIA G. MATAR, GLAMOUR
BY ISSAM, and EXOTICA
CORP.,

      Defendants.

## COMPLAINT

COME NOW, All Hair and Beauty Products, Inc., and James Fugah, and other similarly situated individuals, Plaintiffs, by and through undersigned counsel and allege as follows upon actual knowledge with respect to themselves and their own acts, and upon information and belief as to all other matters.

## NATURE OF THE ACTION

1.  This antitrust, conspiracy and fraud lawsuit is brought against the participants of two separate but related groups that are working together to defraud the public, involved in interstate commerce in the beauty business arena.

2. The business group, comprising of Glamour by Issam and Exotica, Corp., and the personal group, comprising of Issam Matar, Cynthia Gabriella Matar Matar, and Amy Matar, agreed to fix prices, while conspiring to monopolize the market.

3. It is Plaintiff's belief that the business group involves additional defendant and Plaintiff intends to amend this Complaint once those additional defendants are discovered.

4. The two groups, along with other unknown defendants have allocated customers, diverted products, and engaged in group boycotts of nonparticipating competitors, all in a quest to fix, raise, lower, and stabilize the price, as they have wishes or deemed appropriate for their business interests.

5. The participants in the groups have, since at least 1998, conspired to fix prices by agreeing to periodic coordinated price increases, which they typically did by diverting a particular product or group of product and saturating the market. The scheme has even run some beauty brands out of business through predatory collusion and other exclusionary acts.

6. The participants of this complex scheme of price-fixing, bid rigging, customer allocation, group boycotting, and predatory pricing, among other anticompetitive conduct also create fake businesses to divert additional

products and to mislead beauty brands into selling "professional only" product to them.

7. Ultimately every-day customers suffer damages through overcharges.

8. Legitimate beauty brand distributors and the beauty brands themselves suffer damages from the oversaturation of the market, the widespread availability of the product, the lessening of the brand's reputation and their exclusion from the price setting process of their own products.

9. Plaintiff All Hair and Beauty Products, Inc., (and its predecessor entities) are such competitors, and they have collectively suffered $500,000.00 in lost profits and other damages resulting from Defendants' scheme and conduct.

10. Plaintiff James Fugah, and others similarly situated, is also injured customers of the scheme and conduct.

11. This is an action for conspiracy to restrain trade by group boycott under Sherman Act Section 1 in the beauty market, conspiracy to fix prices in the beauty market under Sherman Act Section 1, and monopolization, joint monopolization, and conspiracy to monopolize both markets under Sherman Act Section 2, and state law claims for restraint of trade and tortious interference with business relationships and violation of state law consumer protections.

## JURISDICTION AND VENUE

12. This Court has primary subject-matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1337(a), and Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15, 26 because this action arises under the antitrust laws of the United States.

13. This Court has supplemental jurisdiction over the state law claims of the complaint under 28 U.S.C. § 1367 because they arise from the same nucleus of operative facts as the federal claims such that they form part of the same case or controversy.

14. Plaintiff, ALL HAIR AND BEAUTY PRODUCTS, INC., is a Delaware corporation with its principal office in the State of Georgia.

15. Plaintiff, JAMES FUGAH, is a resident of the State of New York.

16. Defendants GLAMOUR BY ISSAM, and EXOTICA CORP., are registered to do business in the state of New York and may be served via their registered agents

17. Defendants GLAMOUR BY ISSAM, and EXOTICA CORP., are subject to personal jurisdiction in the State of Georgia under O.C.G.A. § 9-10-91 because it has minimum contacts with this district in that it monopolized a market in this state and conspired to engage in anticompetitive conduct in this state, and this lawsuit is related to those contacts.

18. Defendants ISSAM J. MATAR, AMY MATAR, and CYNTHIA G. MATAR are residents of the state of New York.

19. Defendants ISSAM J. MATAR, AMY MATAR, and CYNTHIA G. MATAR are subject to personal jurisdiction in the State of Georgia under O.C.G.A. § 9-10-91 because it has minimum contacts with this district in that it monopolized a market in this state and conspired to engage in anticompetitive conduct in this state, and this lawsuit is related to those contacts.

20. Venue is proper in the Northern District of Georgia under 28 U.S.C. § 1391(b) and 15 U.S.C. §§ 15, 22.

## CLASS ACTION ALLEGATIONS

21. Plaintiff brings this action on behalf of itself and as a class action under Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure seeking injunctive and declaratory relief, as well as costs of suit and attorneys' fees, for violations of the Sherman Act, 15 U.S.C. § 1, on behalf of the following class (the "Class"): all natural persons, sole proprietorships, partnerships, limited partnerships, corporations, and other entities, who indirectly purchased, paid and/or reimbursed for beauty products sold and diverted by Defendants intended for consumption by themselves, their families, or their members, participants, employees or insureds during the period from January 1, 1998 to the present (the "Class Period") in the United States. Excluded from the class

are governmental entities, the Defendants, their co-conspirators, along with all of their respective parents, subsidiaries, and/or affiliates, all persons or entities that purchased the beauty products for purposes of resale, and any and all jurors, judges, and justices assigned to hear any aspect of this litigation.

22. While Plaintiff does not know the exact number of the members of the Class, Plaintiff believe there are at least hundreds of members in the Class.

23. Common questions of law and fact exist as to all members of the Class. This is particularly true given the nature of Defendants' conspiracy which was applicable to all of the members of the Class, thereby making appropriate relief with respect to the Class as a whole. Such questions of law and fact common to the Class include, but are not limited to:

   a. Whether Defendants engaged in a combination and conspiracy among themselves to fix, raise, maintain or stabilize the prices in the United States;

   b. The identity of the participants of the alleged conspiracy;

   c. The duration of the alleged conspiracy and the acts carried out by Defendants in furtherance of the conspiracy;

   d. Whether the alleged conspiracy violated the Sherman Act, as alleged in the Complaint;

   e. Whether the alleged conspiracy violated state laws;

f.  Whether the conduct of Defendants, as alleged in this Complaint, caused injury Plaintiff and the members of the Class;

g.  The effect of the alleged conspiracy on the prices in the United States during the Class Period;

h.  The appropriate injunctive and related equitable relief for the Injunctive Relief Class; and

i.  The appropriate class-wide measure of damages.

24. Plaintiff's claims are typical of the claims of the members of the Class, and Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff and all members of the Class are similarly affected by Defendants' wrongful conduct in that they paid artificially inflated prices purchased indirectly from Defendants.

## SUBSTANTIVE ALLEGATIONS

25. Starting in approximately 1998, Defendants combined and conspired to jointly monopolize and ultimately fix prices in the market for professional beauty products.

26. These companies along with the individual defendants, formed a group and scheme to dominate the market and conspired to protect that domination from competitive threats.

27. The motivations and success of this scheme was supported by Defendants' connections with Quality King, Pro's Choice Beauty Care, Inc., and Primary One, and thus their ability to price supracompetitively in the beauty market.

28. From time to time, Defendants would target a particular beauty brand, in-demand. Individual Defendants would contact the brand and see if the brand wanted to work with Defendant, by selling products to them.

29. If the brand was unwilling to cooperate then Defendants would in contact the brand via business defendants to deceive the brand into selling them the professional-only products.

30. Once Defendants' obtain the products at distributor pricing, they would works with its conspirators to make it more difficult or impossible for brand to sell its products at the set retail or manufacturer price, as Defendants would divert and would be able to offer steep discounts or inflated pricing at their whim and directly to consumers.

## HARM TO PLAINTIFFS AND COMPETITION

31. Plaintiffs and other distributors of beauty brands particularly those that did not participate in the scheme – paid supracompetitive prices for professional beauty products and were competitively disadvantaged by Defendants' supracompetitive price-fixing scheme.

32. Plaintiff was also harmed through lost business and other injury by the exclusionary conduct by defendants. This injury includes, among others, harm, the reduction in sales volume resulting directly from defendants anticompetitive conduct, which inhibited Plaintiffs' ability to achieve necessary economies of scale and Plaintiffs' profits and expansion opportunities in the defined relevant markets and others.

33. Through the exclusion and systematic efforts to competitively disadvantage all distributors not participating in the scheme, consumers of Plaintiffs', beauty brands and interstate commerce suffered supracompetitive prices, reduced quality products, and reduced choice among suppliers in the market.

34. Plaintiffs had no knowledge of the scheme or conspiracies alleged in this complaint or of facts sufficient to place it on inquiry notice of the claims set forth in this complaint until, at the earliest, December 2017, when it learned of the conduct described in this complaint.

35. Plaintiff had no means by which it could have discovered the scheme and conspiracies in either product market prior to December 2017. No information, in the public domain or otherwise, was available to Plaintiff prior to December 2017.

36. For these reasons, the statute of limitations for conduct occurring at least as early as 1998 did not begin to run until December 2017.

37. Moreover, the statute of limitations is tolled by the doctrine of fraudulent concealment, as all defendants, as is common for illegal antitrust conspiracies, concealed their illegal and anticompetitive conduct from its victims and the public.

38. Plaintiff, other distributors, and the public had no knowledge of the scheme and conspiracy alleged in this complaint, or of facts sufficient to place them on inquiry notice of their claims because the Defendants' fraudulently concealed their conduct.

## COUNT I - Joint Monopolization of the market
## 15 U.S.C. § 2

39. Plaintiffs repeat each and every allegation contained in the paragraphs above and incorporate by reference each preceding paragraph as though full set forth at length herein.

40. Section 2 of the Sherman Act, 15 U.S.C. § 2 provides:

> Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony, and, on conviction thereof, shall be punished by fine not exceeding $100,000,000 if a corporation, or, if any other person, $1,000,000, or by imprisonment not exceeding 10 years, or by both said punishments, in the discretion of the court.

41. Defendants jointly possess monopoly power in the market for professional only beauty brands in Georgia as they have the power to exclude competition

and raise prices and have exercised that power to exclude Plaintiffs from the market, to harm competition, and to charge supracompetitive prices to consumers.

42. Through the conduct described herein, defendants willfully maintained that monopoly power by anticompetitive and exclusionary conduct. They acted with the intent to maintain this power, and the illegal conduct has enabled them to do so, in violation of Section 2 of the Sherman Act.

43. The anticompetitive conduct includes, but is not limited to:

  j.  Predatory pricing. The Defendants' obtained, maintained, and protected their joint monopoly by pricing below variable cost. Defendants' understood any losses from predatory pricing would be recouped by the supracompetitive prices they would charge after their targets were driven from the market.

  k.  Supracompetitive pricing. Whenever possible, Defendants' raised prices to recoup their losses and to reap the rewards of their domination of the market.

44. Plaintiff have been harmed by defendants' willful maintenance of their joint monopoly and their exclusion of competitors.

## COUNT II - Conspiracy to Monopolize the market
## 15 U.S.C. § 2

45. Plaintiffs repeat each and every allegation contained in the paragraphs above and incorporate by reference each preceding paragraph as though full set forth at length herein.

46. Defendants combined and conspired to acquire and maintain monopoly power in the markets, with the specific intent and purpose to exclude all other competition and to monopolize that market.

47. Defendants took overt acts manifesting this intent.

48. Defendants' concerted actions had the necessary and direct effect of entrenching their monopoly power.

49. The market has been harmed by defendants' conduct as consumers have been forced to pay supracompetitive prices while being limited to where or whom they purchase their products from or the price they pay for them.

50. Plaintiffs have been harmed by defendants' willful maintenance of their monopoly and their exclusion of low price competitors.

## COUNT III - Conspiracy to Restrain Trade (Price Fixing) in the Market
## 15 U.S.C. § 1

51. Plaintiffs repeat each and every allegation contained in the paragraphs above and incorporate by reference each preceding paragraph as though full set forth at length herein.

52. Defendants entered into and engaged in a contract, combination, or conspiracy in unreasonable, per se illegal restraint of trade in violation of Section 1 of the Sherman Act.

53. Beginning as early as 1998 and continuing without interruption through the present, the exact starting date being unknown to Plaintiff and exclusively within the knowledge of defendants, the defendants entered into a continuing contract, combination, or conspiracy to unreasonably restrain trade by artificially reducing or eliminating competition.

54. In particular, the Defendants' combined and conspired to raise, fix, maintain, or stabilize the price of professional only beauty brands. As a result of its conduct, prices were actually raised, fixed, maintained, and stabilized.

55. The conspiracy among the Defendants consisted of a continuing agreement, understanding, and concerted action among them.

56. As a result of the unlawful conduct, Plaintiffs' have been injured in its business and property in that it has paid more for products than it otherwise would have paid in the absence of the unlawful scheme.

## COUNT IV - Declaratory Judgment
## 28 U.S.C. § 2201

57. Plaintiffs repeat each and every allegation contained in the paragraphs above and incorporate by reference each preceding paragraph as though full set forth at length herein.

58. An actual and justiciable controversy exists between Plaintiffs and Defendants.

59. Defendant' actions and assertions described above have caused and will continue to cause irreparable harm to Plaintiff and the public. Plaintiff has no adequate remedy at law.

60. Plaintiffs therefore seeks a declaration from this Court declaring that the defendants have attempted and maintained an illegal monopoly under Section 2 of the Sherman Act in the market and a conspiracy to restrain trade under Section 1 of the Sherman Act in the market, to the detriment of consumers and competition.

61. Plaintiffs also seeks a declaration from this Court declaring that the defendants have attempted and maintained an illegal joint monopoly under Section 2 of the Sherman Act in the market, and a conspiracy to restrain trade under Section 1 of the Sherman Act, to the detriment of consumers and competition.

## COUNT V - Restraint of Trade
## O.C.G.A. § 13-8-2

62. Plaintiffs repeat each and every allegation contained in the paragraphs above and incorporate by reference each preceding paragraph as though full set forth at length herein.

63. The defendants' conduct proximately caused financial injury to Plaintiff.

## **COUNT VI – Georgia Racketeer Influence and Corrupt Organization Action**
## **O.C.G.A. § 16-14-3**

64. Plaintiffs repeat each and every allegation contained in the paragraphs above and incorporate by reference each preceding paragraph as though full set forth at length herein.

65. Defendant Glamour by Issam is an "enterprise" as defined in O.C.G.A. § 16-14-3(6)

66. Defendant Exotica, Corp., is an "enterprise" as defined in O.C.G.A. § 16-14-3(6)

67. Defendants have engaged in a "pattern of racketeering activity" as defined in O.C.G.A. § 16-4-3(8).

68. As predicate acts, among the incidents of "racketeering activity," Defendants have engaged in two or more incident of prohibited activities as defined by O.C.G.A. § 16-14-4(a) and (b).

69. Plaintiffs have sustained damages as a result of Defendants' pattern of racketeering activity.

70. Plaintiffs are entitled to be awarded injunctive relief and damages against Defendants' as provided by O.C.G.A. § 16-4-6, including treble damages and attorney fees.

## COUNT VII – VIOLATION OF NEW YORK STATE ANTITRUST LAWS

71. Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs set forth above.

72. During the Class Period, Defendants and their co-conspirators engaged in a continuing contract, combination, or conspiracy with respect to the sale of beauty products in unreasonable restraint of trade and in violation of the New York state statues.

73. By reason of the foregoing, Defendants have violated New York General Business Laws, §§ 340, et seq. Plaintiff on behalf of the Class alleges as follows:

   a. Defendants' combination or conspiracy had the following effects:

      i. Price competition was restrained, suppressed, and eliminated throughout New York;

      ii. prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New York;

      iii. Plaintiff and members of the Class were deprived of free and open competition; and

      iv. Plaintiff and members of the Class paid supra-competitive, artificially inflated prices.

v.  During the Class Period, Defendants' illegal conduct substantially affected New York commerce.

vi.  As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Class have been injured in their business and property and are threatened with further injury.

vii.  By reason of the foregoing, Defendants entered into agreements in restraint of trade in violation of New York General Business Laws, §§ 340, et seq. Accordingly, Plaintiff and members of the Class seek all forms of relief available under New York General Business Laws, §§ 340, et seq.

## COUNT VIII – VIOLATION OF NEW YORK STATE CONSUMER PROTECTION STATUTES

74. Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs set forth above.

75. Defendants engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the state consumer protection and unfair competition statutes listed below.

76. By reason of the foregoing, Defendants have violated New York General Business Laws, § 349, et seq. Plaintiff on behalf of the Class alleges as follows:

a. Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and noncompetitive levels, the prices at which the beauty products were sold, distributed or obtained in New York and took efforts to conceal their agreements from Plaintiff and the Class.

b. The conduct of the Defendants described herein constitutes consumer oriented deceptive acts or practices within the meaning of New York General Business Laws, § 349, which resulted in consumer injury and broad adverse impact on the public at large, and harmed the public interest of New York State in an honest marketplace in which economic activity is conducted in a competitive manner.

c. Defendants made certain statements about beauty products that they knew would be seen by New York residents and these statements either omitted material information that rendered the statements they made materially misleading or affirmatively misrepresented the real cause of price increases

d. Defendants' unlawful conduct had the following effects:

    i. price competition was restrained, suppressed, and eliminated throughout New York;

      ii.  prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New York;

      iii.  Plaintiff and the Class were deprived of free and open competition; and

      iv.  Plaintiff and the Class paid supra-competitive, artificially inflated prices.

e.  During the Class Period, Defendants' illegal conduct substantially affected New York commerce and consumers.

f.  During the Class Period, each of the Defendants named herein, directly, or indirectly and through affiliates they dominated and controlled, manufactured, sold and/or distributed in New York.

g.  Plaintiff and members of the Class seek all relief available pursuant to New York General Business Laws, § 349(h)

## COUNT IX – UNJUST ENRICHMENT

77. Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs set forth above.

78. As a result of their unlawful conduct described above, Defendants have and will continue to be unjustly enriched by the receipt of unlawfully and artificially inflated prices.

79. Defendants have benefited from their unlawful conduct described above. It would be inequitable for Defendants to be permitted to retain any of the ill-gotten gains resulting from the overpayments made by Plaintiff and members of the Class during the Class Period.

80. Plaintiff and members of the Class are entitled to the amount of Defendants' ill-gotten gains resulting from their unlawful, unjust, and inequitable conduct. Plaintiff and members of the Class are therefore entitled to the establishment of a constructive trust consisting of all ill-gotten gains from which Plaintiff and members of the Class may make claims on a pro rata basis.

## <u>COUNT X - FRADULENT MISREPRESENTATION</u>

81. Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs set forth above

82. Defendants misrepresented to Plaintiff and the Class price of the products and their ability in the given markets.

83. For the Class Period, Defendants have continued to misrepresent the price of the products and their ability in the given markets.

84. Plaintiff and the Class have reasonably relied on these misrepresentations to their detriment.

85. Plaintiff and the Class are entitled to any and all compensatory damages flowing from their reliance on these misrepresentations. Plaintiff and the Class

are also entitled and hereby demand punitive damages based on this fraudulent and egregious conduct.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs request that this Court:

A. Declare that defendants' conduct violates 15 U.S.C. §1, § 2, Georgia state law and New York state law;

B. Restitution and/or damages to Class members for their purchases

C. Equitable relief in the form of restitution and/or disgorgement of all unlawful or illegal profits received by Defendants as a result of the anticompetitive conduct alleged herein

D. An injunction against Defendants, their affiliates, successors, transferees, assignees, and other officers, directors, partners, agents and employees thereof, and all other persons acting or claiming to act on their behalf or in concert with them, from in any manner continuing, maintaining, or renewing the conduct, contract, conspiracy, or combination alleged herein, or from entering into any other contract, conspiracy, or combination having a similar purpose or effect, and from adopting or following any practice, plan, program, or device having a similar purpose or effect;

E. Enter judgment against defendants;

F. Award Plaintiffs treble damages;

G. Award Plaintiffs pre- and post-judgment interest at the applicable rates on all amounts awarded;

H. Award Plaintiffs their costs and expenses of this action, including its reasonable attorneys' fees necessarily incurred in bringing and pressing this case, as provided in 15 U.S.C. § 15 and § 26;

I. Grant permanent injunctive relief to prevent the recurrence of the violations for which redress is sought in this complaint; and

J. Order any other such relief as the Court deems appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs' hereby demand a trial by jury on all claims.

DATED: January 25, 2018,

**The East Coast Law Firm**
Attorney for Plaintiff
3904 N. Druid Hills Rd. #136
Decatur, GA 30033
O: (800) 515-7154
cpm@eastcoastlawfirm.com
service@eastcoastlawfirm.com

*/s/ Cecilia Perez-Matos*
Cecilia Perez-Matos, Esq.
Ga. Bar No. 190918